SCOTT N. SCHOOLS, SCSBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
EDWARD A. OLSEN, CSBN 214150
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-6915
FAX: (415) 436-6927

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KUAN HOW YANG, <br> JUI NING YANG, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; <br> EMILIO T. GONZALEZ, Director of U.S. Citizenship and Immigration Services; <br> CHRISTINA POULOS, Director of California Service Center, U.S. Citizenship and Immigration Services; <br> ROBERT S. MUELLER, Director of the Federal Bureau of Investigation; <br><br> Defendants. | No. C 07-2870 HRL <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

**I. INTRODUCTION**

The plaintiffs, Kuan How Yang ("Kuan How") and Jui Ning Yang ("Jui Ning"), are natives and citizens of China who filed Form I-485 applications to adjust their status to lawful permanent resident with the United States Citizenship and Immigration Services (USCIS) on or about December 9, 1997, and June 28, 2001, respectively.[1] Plaintiff Kuan How's I-485 has recently

---

[1] The plaintiffs' mother's I-485 application was approved on June 7, 2004.
DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

(yesterday) been granted. *See* Attachment A. Plaintiff Jui Ning's I-485 application is pending with USCIS.

The plaintiffs filed an action on June 1, 2007, seeking an order from this Court directing USCIS to adjudicate their I-485 applications. The plaintiffs have filed a motion for summary judgment. The defendants hereby submit their opposition to plaintiffs' motion for summary judgment and a cross-motion for summary judgment.

## II. BACKGROUND

### A. Adjustment of Status

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes USCIS to adjust to permanent residence status certain aliens who have been admitted into the United States. However, adjustment of status is committed to the Attorney General's discretion as a matter of law. Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled int the United States ... *may* be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

8 U.S.C. 1255(a) (emphasis added).

Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status. Nor is any time frame specified in the regulations setting forth the procedures for aliens to apply to adjust status. *See* 8 C.F.R. § 245 et. seq.

### B. The Number of I-485 Applications the California Service Center Processes

The plaintiffs' I-485 applications for adjustment of status are being processed by the California Service Center ("CSC"), one of several USCIS services centers that adjudication applications for immigrations benefits. Declaration of Monte Herring ¶ 3, 20. The CSC received 1,499,938 applications or petitions for immigrations benefits in the last eleven months of the current fiscal year alone. Herring Declaration ¶ 3. The CSC averages 115,915 application or petition completions per month, including initial processing of naturalization applications prior to their transfer to local district offices. *Id.* The four USCIS Service Centers combined average 387,776 receipts per month, or 4,265,536 in the last eleven months. *Id*.

**C. Background Checks**

Before an alien's I-485 application can be adjudicated, USCIS, in conjunction with the FBI, conducts several forms of security and background checks to ensure that the alien is eligible for the benefit sought and that he or she is not a risk to national security or public safety. Herring Declaration ¶ 4. USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. *See* 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States").

These checks currently include: (1) an FBI name check, which is run against FBI investigative databases compiled by law enforcement agencies including administrative, applicant, criminal, personnel and other files; (2) an FBI fingerprint check, which provides information relating to criminal background within the United States; and (3) a check against the Interagency Border Inspection System (IBIS), which contains records and information from more than 20 federal law enforcement and intelligence agencies including the Central Intelligence Agency (CIA), FBI, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies, and is used to compile information regarding national security risks, public safety concerns, and other law enforcement concerns. *See* Herring Declaration Declaration ¶¶ 5, 6.

These law enforcement checks have revealed significant derogatory information on various alien applicants for immigration benefits, including applicants seeking permanent residency, which has resulted in the alien being found ineligible for the benefit and USCIS's denial of the application. Herring Declaration ¶ 4. These law enforcement checks have also resulted in aliens being arrested by law enforcement agencies or charged with removability from the United States. *Id.* In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or FBI name checks. *Id.*

Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

1  thorough background checks on aliens who are seeking immigration status in the United States has
2  required procedures that sometimes result in individuals not receiving an adjudication of their
3  immigration application as quickly as in the past.  Herring Declaration ¶¶ 6, 7.  In order to ensure
4  national security and public safety, as well as to reduce the waiting time for adjudication of
5  applications, USCIS is currently working with the Department of Justice and other agencies to
6  develop improved procedures that will ensure that all of the background checks are completed and
7  the results considered as quickly as possible.  *See id.*  However, the public safety requires USCIS
8  to make certain that the checks have been done before it adjudicates any application or petitions
9  and before it issues any immigration status documents to such persons.  *See id.*  USCIS will
10 continue to perform any outstanding background and security checks as expeditiously as possible
11 to ensure that no eligible alien must wait longer than is reasonably necessary to receive a decision
12 on his or her application or petition and to receive evidence of his or her immigration status.
13 Herring Declaration ¶ 8.

**D.  The Plaintiffs' I-485 Applications**

The plaintiffs are natives and citizens of China.  Herring Declaration ¶ 20.  They are derivative beneficiaries of an approved Immigrant Petition for Alien Worker (Form I-140) filed on behalf of their mother, Mei Li Fong, by her employer Dynatron Corp.  *Id.*  USCIS approved the I-140 petition on November 16, 2003.

Plaintiff Kwan How's name check request was submitted to the FBI on January 19, 2005, and was completed on October 11, 2007.  *Id.*  His I-485 application was adjudicated by USCIS on October 11, 2007, and his case is moot.  A copy of the USCIS's approval of Kwan How's I-485 application is attached as Attachment A.

Plaintiff Jui Ning Yang's name check request was submitted to the FBI on September 15, 2007, and is still pending.  *Id.*  At the present time, there are three possibilities: (1) in the event that FBI clears the name check for Jui Ning, USCIS can approve the application within one to two business days of being notified of the clearance; (2) in the event the FBI reports a "positive response," significant additional time would likely be required while USCIS learned the precise nature of the positive information and determined whether it would have any bearing on the

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

1 outcome of the adjudication; and (3) as long as the FBI query continues to return its current
2 response of "pending," the USCIS's hands are tied and USCIS would be unable to move beyond
3 this point.

### III.  SUMMARY JUDGMENT METHODOLOGY

5 This Court shall grant summary judgment when it finds that "there is no genuine issue as to any
6 material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.
7 P. 56(c); *see also Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

### IV.  ARGUMENT

**A.  This Court Should Dismiss Robert S. Mueller**

10 Since March 1, 2003, the Department of Homeland Security has been the agency responsible
11 for implementing the Immigration and Nationality Act. *See* 6 U.S.C. §§ 271(b)(5), 557. Thus, the
12 only relevant Defendant here is Michael Chertoff, in his capacity as Secretary of the Department of
13 Homeland Security, and Defendant Robert S. Mueller should be dismissed. *See Konchitsky v.
14 Chertoff*, No. C-07-00294 RMW, 2007 WL 2070325, at *6-7 (N.D. Cal. July 13, 2007); *Dmitriev
15 v. Chertoff,* No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007); *Clayton v.
16 Chertoff*, C-07-2781-CW (N.D. Cal. Oct. 1, 2007).

**B.  Relief Is Unavailable Under The Mandamus Act and the APA**

18 Mandamus is reserved for those situations in which the agency has a ministerial,
19 nondiscretionary duty that is so plainly prescribed as to be free from doubt. *See Kildare v. Saenz*,
20 325 F.3d 1078, 1084 (9th Cir. 2003). A ministerial act is "devoid of the exercise of judgment or
21 discretion." *Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987).
22 A duty is ministerial "where the officer can do only one thing." *Work v. United States*, 267 U.S.
23 175, 177 (1925). Courts have consistently recognized that "the remedy of mandamus is a drastic
24 one, to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.*, 449
25 U.S. 33, 34 (1980).
26 Similarly, a court has jurisdiction to act under section 706(1) of the APA (authorizing courts to
27 "compel agency action . . . unreasonably delayed") only when "an agency is compelled by law to
28 act within a certain time period," but the agency has failed to comply with that time period. *See*

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).  As an example, the Supreme Court in *Norton* stated that the Federal Communications Commission's failure to establish regulations within 6 months of the date of the Telecommunications Act of 1996, as required by the Act, "would have supported a judicial decree under the APA requiring the prompt issuance of regulations."  *See id.*  "The principal purpose of the APA limitations we have discussed – and of the traditional limitations upon mandamus from which they are derived – is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve."  *Norton*, 542 U.S. at 66.

      The adjudication of an adjustment of status application is a matter committed to the discretion of USCIS.  *See* 8 U.S.C. § 1255(a) (an alien's status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe."); 8 C.F.R. § 103.2(b)(7) ("[The agency] may direct any necessary investigation"); 8 C.F.R. § 103.2(b)(18) ("A district director may authorize withholding adjudication"); 8 C.F.R. § 245.6 (an "interview may be waived . . . when it is determined by the Service that an interview is not necessary").  Moreover, the processing of an individual's name check is a matter committed to the discretion of the FBI.  *See Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at * 6 (S.D. Tex. May 24, 2007) ("The evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but also to the FBI's exercise of discretion in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks."); *see also Shalabi v. Gonzales*, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23, 2006) ("A background check that is rushed or incomplete due to an artificial court imposed deadline would not meet the statutory and regulatory requirements of a 'full criminal background check' before the USCIS can make a determination on an application."); *id*. ("There is no statute or regulation which imposes a deadline for the FBI to complete a criminal background check."); *Sozanski v. Chertoff*, No. 06-CV-0993 (N.D. Tex. Dec. 11, 2006) (holding that district court lacks jurisdiction to compel the FBI to perform name checks in adjustment of status cases).

      The agencies' discretion precludes judicial review of both the ultimate decision on an

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

individual's I-485 application *and* the process by which the decision is reached. In *Heckler v. Chaney*, 470 U.S. 821 (1985), the Supreme Court interpreted 5 U.S.C. § 701(a)(2) to mean that "review is not to be had if the statute is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830. As the Court went on to explain, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Id.* (emphasis added)**.**

Here, there are no statutory or regulatory provisions which provide a "meaningful standard" against which to measure the time it takes the FBI to complete a name check or for USCIS to process an application. Without any mandatory time frames, in order to determine that the agencies have "unreasonably delayed" adjudication of the plaintiff Jui Ning' application (plaintiff Kwan How's application has already been adjudicated), this Court would have to create a temporal standard from thin air. This is a perilous task given the national security considerations that affect the FBI's and USCIS's respective roles in the I-485 process. Although USCIS must eventually notify an applicant of its decision on a I-485 application, *see* 8 C.F.R. § 245.2, the applicant is not entitled to a decision within any particular time frame. *See Sharif v. Chertoff*, ___ F. Supp. 2d ___, 2007 WL 2045489, at * 5 (N.D. Ill. July 18, 2007).

Congress clearly knows how to provide a deadline for processing an application for an immigration benefit, but chose to remain silent in the context of I-485 applications. For example, Congress provided that an application for naturalization must be processed within 120 days after the date the applicant is examined. *See* 8 U.S.C. § 1447(b). The Immigration and Nationality Act provides no time frame for processing an I-485 application. Accordingly, under *Norton*, this Court is unable, under either the mandamus statute or the APA, to direct USCIS to act within a specific time period on the plaintiff's I-485 application. *See Norton*, 542 U.S. at 65.

Finally, the granting of a writ of mandamus to compel the processing of routine immigrant applications out of order would have several negative repercussions. First, it would unfairly favor applicants with the means to hire an attorney and file federal mandamus actions. Applicants without the resources to bring such actions would suffer further delays in the processing of their

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

applications, because other later-filed applications would be given court-mandated preferential treatment. Second, allowing immigration applicants to use mandamus to "cut in line," would open the floodgates for immigration-related mandamus actions. The use of mandamus in immigration matters would shorten the delay for some, only to lengthen it for others. An equitable solution to the processing delays lies not with the Judicial branch, but with the Executive and Legislative branches of government, for only these branches of government can properly address the budget and staffing issues that have caused the delays to occur.

In sum, the defendants have no clear, mandatory duty to process a name check or to adjudicate the plaintiff's I-485 application within any particular time frame. In failing to specify any temporal limitations, and in leaving it to the agency to prescribe any appropriate regulations, Congress vested the agencies with complete discretion over the process of adjudicating an I-485 application. Accordingly, this Court lacks jurisdiction over the plaintiff's mandamus and APA claims. *See Li v. Chertoff*, 482 F. Supp. 2d 1172, 1177 (S.D. Cal. 2007); *Zheng v. Reno*, 166 F. Supp. 2d 875, 880-81 (S.D. Cal. 2001) ("Matters within the INS's discretion are not reviewable under the mandamus statute. Thus, courts in this district have repeatedly held that mandamus relief is unavailable for delays in the adjustment process."); *Safadi v. Howard*, 466 F. Supp. 2d 696, 698-700 (E.D. Va. 2006) (concluding that § 1255(a) vests USICS with discretion over the entire process of adjustment application adjudication); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1351 (S.D. Fla. 2007) ("Sections 242 and 245 of the Immigration and Nationality Act . . . preclude judicial review of any discretionary "decision or action' of the Attorney General in immigration matters includ[ing] the pace at which immigration decisions are made.").[2]

---

[2] The defendants acknowledge that a number of other courts, including judges in this district, have held to the contrary. *See, e.g., Dong v. Chertoff*, C-07-266-SBA, 2007 WL 2601107 (N.D. Cal. 2007); *Konchitsky v. Chertoff*, 2007 WL 2070325, at *3 (N.D. Cal. 2007); *Toor v. Still*, 2007 WL 2028407, at *2 (N.D. Cal. 2007); *Fu v. Gonzales*, C-07-207 (N.D. Cal. 2007); *Dmitriev v. Chertoff*, 2007 WL 1319533, at *3 (N.D. Cal. 2007); *Wu v. Chertoff*, 2007 WL 1223858, at *3 (N.D. Cal. 2007); *Baker v. Still*, 2007 WL 1393750, at *2 (N.D. Cal. 2007); Gelfer v. Chertoff, 2007 WL 902382 (N.D. Cal. 2007); *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007); *Yu v. Chertoff*, 2007 WL 1742850 (N.D. Cal.) *Yu v. Brown*, 36 F. Supp. 2d 922, 932 (D.N.M. 1999).

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

**C. 8 U.S.C. § 1252(a)(2)(B)**

This Court is also barred from reviewing this action under 8 U.S.C. § 1252(a)(2)(B), which provides:

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, **no court shall have jurisdiction to review --**

(i) **any judgment regarding the granting of relief** under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) **any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security**, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added)

8 U.S.C. § 1255, to which 8 U.S.C. § 1252(a)(2)(B) refers, provides:

(a) Status as person admitted for permanent residence on application and eligibility for immigrant visa

**The status of an alien** who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as VAWA self-petitioner **may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe**, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255 (emphasis added).

The reference in 8 U.S.C. § 1252(a)(2)(B)(ii) to "action of the Attorney General or the Secretary of Homeland Security" encompasses the pace at which USCIS processes an I-485 application. In *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006), for example, the United States District Court for the Eastern District of Virginia concluded that the term "action," "encompasses any act or series of acts that are discretionary within the adjustment of status process . . . action . . . encompasses the entire process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds." *Safadi*, 466 F. Supp. 2d at 699; *see also Grinberg v. Swacina*, 478 F. Supp. 2d 1350

1 (S.D. Fla. 2007) (electing "to follow the majority of courts that have dismissed similar actions for
2 lack of subject matter jurisdiction, under the rationale that Sections 242 and 245 of the [INA], 8
3 U.S.C. §§ 1255(a), 1252(a)(2)(B)(ii) (2006, as amended in 2005, preclude judicial review of any
4 discretionary 'decision or action' of the Attorney General in immigration matters"); *Li v. Chertoff*,
5 482 F. Supp. 2d 1172, 1177 (S.D. Cal. 2007) ("These statutes clearly convey Congress' intent to
6 preclude courts from reviewing discretionary decisions or actions of USCIS regarding I-485
7 applications"); *Eldeeb v. Chertoff*, 2007 WL 2209231, at *13 (M.D. Fla. 2007) ("Therefore, this
8 Court has elected to interpret the § 1252(a)(2)(B)(ii) jurisdictional bar broadly, and has concluded
9 that the pace of adjudication of an 1485 application is a discretionary function of the CIS"); *see*
10 *also Borisov v. Gonzales*, CV 06-8240-VBF; *Mustafa v. Pasquerell*, No. Civ.SA05CA-658-XR,
11 2006 WL 488399 (W.D. Tex. Jan. 10, 2006); *Zaytsev v. Gantner*, No. 04Civ.7101 WHP, 2004 WL
12 2251665 (S.D.N.Y. Sept. 24, 2004). *But see Dong v. Chertoff*, C-07-266-SBA, 2007 WL 2601107
13 (N.D. Cal. Sept. 6, 2007) (rejecting argument that 8 U.S.C. § 1252(a)(2)(B)(ii) deprives the court
14 of jurisdiction to hearing a claim that an adjudication of an adjustment of status application has
15 been unlawfully withheld); *Cao v. Upchurch*, ___ F. Supp. 2d ___, 2007 WL 2071900, at *2 (E.D.
16 Pa. 2007) ("While 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust status in
17 the discretion of the Attorney General, it says nothing about the pace of such a decision, and
18 certainly does not confer on the Attorney General discretion to let a petition languish
19 indefinitely"); *Elmaky v. Upchurch*, No. 3:06-CV-2359-B, 2007 WL 944330 (N.D. Tex. Mar. 28,
20 2007); *Duan v. Zamberry*, 2007 WL 626116, at *2 (section 1252(a)(2)(B)(ii) strips jurisdiction to
21 review only those decisions within the Attorney General's discretion as specified in the statute,
22 namely, the decision to adjust status, not the pace of the application processing).

23 "[T]he ultimate decision to grant or deny an application lies within the discretion of the CIS. It
24 would make little sense to allow a court to review the pace of processing of an application, where
25 the ultimate decision to grant or deny an application is entrusted to the discretion of the agency."
26 *Borisov v. Gonzales*, CV 06-8240-VBF, at 7.

27 In sum, the defendants respectfully ask this Court to conclude that it lacks jurisdiction to
28 review the pace at which the FBI and USCIS complete the name check and adjudicate the

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

1  plaintiff's I-485 application.

**D. The Delay is Reasonable**

Even if this Court were to find jurisdiction, any delay in the processing of the plaintiff's I-485 application has been reasonable.

To determine whether a delay is egregious, such that relief under the APA is warranted, several circuits have adopted the test first articulated in *Telecomm. Research and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("T*RAC*").  As outlined in *TRAC*, the factors for consideration include:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulations are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay;
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80.

Courts have consistently cautioned against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 525 (1978).  Where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the impact of the delays on the applicants' interests." *Wright v. Califano*, 587 F.2d 345, 353 (7th Cir. 1978).

The court in *Sze v. INS*, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24, 1997), which applied the *TRAC* test to a similar complained-of delay in the immigration context, found

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

1 the fourth factor to be the most persuasive. *Id.* at *8. The court, in refusing to grant relief under
2 the APA, held that "the reasonableness of administrative delays must be judged in light of the
3 resources available to the agency." *Id*. The court also recognized that by granting relief, it
4 "would, at best, reorder the queue of applications, thereby leading to little net benefit." *Id.*; *see*
5 *also Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (granting deference to
6 agency's decision on how to handle competing applications for permanent labor certifications); *Li*
7 *v. Gonzales*, No. 06-5911 (SRC), 2007 WL 1303000, *6 (D.N.J. May 3, 2007) "[I]t is ill-advised
8 for courts to interfere with otherwise unreviewable agency decisions. When, as here, the Court
9 lacks power to review the ultimate agency decision and the agency's cases are backlogged,
10 granting the writ to compel adjudication would do nothing more than shuffle to the front of the
11 line those I-485 applicants canny enough to file a Complaint in federal district court.").
12     The first TRAC factor requires an agency to govern decision-making with a rule of reason.
13 *TRAC*, 750 F. 2d at 80. Given the large volume of petitions and applications requiring
14 adjudication, see Herring Declaration ¶ 3, the extensive background check that is required for
15 national security and public safety, the exponential growth in the number of name checks the FBI
16 must completed, and the limited resources available to the agencies, the FBI and the USCIS are
17 proceeding in an orderly fashion with the completion of name checks in the order in which they are
18 received and the adjudication of I-485 applications once all required background checks have been
19 completed. Plaintiff Kwan How's I-485 application has been approved and his case is therefore
20 moot. See Attachment A. Although Plaintiff Jui Ning's I485 application has been pending since
21 June 28, 2001, her mother's I-140 application, upon which Jui Ning's I-485 application is based,
22 was only approved on November 16, 2003. Herring Declaration ¶ 20. Moreover, Jui Ning's I-485
23 application was pre-adjudicated on August 15, 2006, and will be promptly adjudicated once her
24 name check is completed by the FBI. Herring Declaration ¶¶ 20, 22.
25     The second *TRAC* factor does not apply to the present case because there is neither a statutory
26 requirement that the FBI process the name check nor one requiring USCIS to adjudicate the
27 application within a certain amount of time. *Cf.* Contra Intelligence Reform and Terrorism
28 Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

1  Government personnel security checks to be completed within a certain time frame). Additionally,
2  Congress has not provided any clear guidelines indicating the speed at which the FBI and USCIS
3  should conduct its adjudications. Congress has, however, required that USCIS conduct certain
4  criminal and national security background checks to ensure eligibility for adjustment of status.
5  *See* 8 U.S.C. §1255(a).

6  Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court
7  must consider the factors that contribute to the backlogs that both the FBI and USCIS face. *See,*
8  *e.g., INS v. Miranda*, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by the
9  INS and the need to investigate their validity may make it difficult for the agency to process an
10 application as promptly as may be desirable"). The Declaration of Monte Herring details the
11 necessity of conducting background checks and the stagering volume of applications and petitions
12 the USCIS processes on a monthly basis. Herring Declaration ¶¶ 3-8.

13 The third factor is the impact the delay has on human health, welfare, and economic harm to
14 plaintiffs. This factor's analysis overlaps with the analysis of the fifth *TRAC* factor, the nature and
15 extent of the interests prejudiced by the delay. *TRAC*, 750 F.2d at 80; *Liberty Fund*, 394 F. Supp.
16 2d at 118. The plaintiff Jui Ning may be inconvenienced by the delay in adjudication, but this
17 individual interest cannot outweigh defendants' interests in fully and accurately completing each
18 name check. Security background checks for individuals seeking immigration benefits is a key
19 component to our nation's national security. *See* The 9/11 Commission Report, 2004 WL 1634382
20 at 352 (July 22, 2004) (finding that, "had the immigration system set a higher bar for determining
21 whether individuals are who or what they claim to be....it could have potentially have excluded,
22 removed, or come into further contact with several hijackers who did not appear to meet the terms
23 for admitting short-term visitors.").

24 In most cases, the adverse impact caused by the delay is not substantial. Applicants for
25 adjustment of status who have pending applications may apply for and obtain employment
26 authorization for the entire time the application is pending. *See* Herring Declaration ¶ 19.
27 Additionally, most applicants may also apply for and receive advance parole to enable them to
28 travel abroad during the pendency of their application. *Id.* Even when a more substantial impact

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

is felt by an applicant, this impact, "is unlikely to rise to the level that would significantly change the Court's assessment of the unreasonableness of the delay in light of the importance of the agency's competing priorities." *Liberty Fund*, 394 F. Supp. 2d at 118.  As the highest of priorities, "our national security requires that caution and thoroughness in these matters not be sacrificed for the sake of expediency." *Safadi v. Howard*, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006).  Although a delay in processing may have a negative impact, "nevertheless, in this post-9/11 context, agencies must have the freedom to carefully and thoroughly investigate these applications without judicial interference in their priorities." *Patil v. Mueller, et al.*, No. C 07cv71 JCC, 2007 WL 1302752 at *2 (E.D. Va. Apr. 30, 2007) (holding that the Court had no jurisdiction to issue a writ of mandamus due to legal and policy considerations).  Thus, when balancing the agencies' interests in defending against threats to national security against the plaintiff's interest in adjudication, the interests of the nation must prevail.

Similarly, the effect of expediting delayed agency action under the fourth *TRAC* factor would unquestionably impinge upon agency activities and responsibilities of a higher priority.  Such an order would intrude on the agency's discretion and ability to fulfill its highest priority of safeguarding the nation. *See Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1027 (7th Cir. 2002) ("the government's interest in preventing terrorism is not only important but paramount"); *see also Walters v. Reno*, 145 F.3d 1032, 1043 (9th Cir. 1998) ("The Government's interests in the administration of its immigration laws and in preventing [immigration related] document fraud are likewise considerable.").

Delays in the processing of FBI name checks arise for a variety of reasons.  First, USCIS is not the only agency that engages in the FBI name check program, and notably, the FBI and USCIS processes do not occur in vacuums.  Any requirement that the FBI or USCIS process the plaintiff's name check or application within a particular time limit will have the unfortunate side effect of slowing the processing for other applicants who are also awaiting action on their applications for immigration benefits.   Absent compelling reasons, moving some individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing. *See In re Barr Lab. Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991); *Mashpee*

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

*Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1101 (D.C. Cir. 2003). Furthermore, ordering plaintiff's case to the front of the line sets the precedent that the more litigious applicants are most likely to move to the top of the pile at the expense of other applicants that have waited even longer, but may not have the resources to file suit. *Manzoor v. Chertoff*, 472 F. Supp 2d 801, 809 (E.D. Va. 2007); *see also Yan*, 2007 WL 1521732 at *7 (holding that a grant of review of petitioner's claims would only, "encourage other applicants to file suit to receive expedited treatment rather than wait their turn in line.").

Moreover, the courts have been cautioned against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 525 (1978). Here, where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the impact of the delays on the applicants' interests." *Wright*, 587 F.2d at 353. The complexity of agency investigations, as well as the extent that the individual applicants contributed to delays, also enter into a court's deliberations. *See Saleh v. Ridge*, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005). An agency's good faith efforts to address delays militate against a finding of unreasonableness. *See Wright*, 587 F.2d at 345.

The sixth and last *TRAC* factor provides that a court need not find impropriety to hold that an agency action is unreasonably delayed. Conversely, "the good faith of the agency in addressing the delay weighs against mandamus." *Liberty Fund*, 394 F. Supp. 2d at 120. Here, the delay in adjudicating plaintiff Jui Ning's I-485 application is due to the pendency of the plaintiff's FBI name check, which both the FBI and USCIS state is essential to ensuring the safety of the public.

Given the large volume of petitions and applications requiring adjudication, the extensive background check that is required for national security and public safety, and the limited resources available to the agencies, the FBI and USCIS are proceeding in an orderly fashion with the processing of the name check and the adjudication of the plaintiff's adjustment of status. The USCIS has pre-adjudicated plaintiff Jui Ning's I-485 application and is prepared to adjudicate it

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL

once the FBI completes the name check. Herring Declaration ¶¶ 21, 22. Contrary to the plaintiff's intimations, the failure to complete adjudication of her application is not arbitrary, nor is it unreasonably delayed..

### V. CONCLUSION

For the foregoing reasons, the defendants respectfully ask this Court to deny the plaintiffs' motion for summary judgment, grant the defendants' motion for summary judgment, and dismiss the plaintiffs' action in its entirety.

Dated:   October 12, 2007                                      Respectfully submitted,

                                                               SCOTT N. SCHOOLS
                                                               United States Attorney


                                                                        /s/
                                                               EDWARD A. OLSEN
                                                               Assistant United States Attorney

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
C 07-2870 HRL